UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MAUREEN COLLVER,

                    Plaintiff,                         Case No. 16-cv-12968

v.                                             Honorable Thomas L. Ludington

BAY REGIONAL MEDICAL CENTER
d/b/a McLAREN BAY REGION,

                    Defendant.

_____/

**ORDER CONVERTING MOTION FOR JUDGMENT ON THE PLEADINGS
INTO MOTION FOR SUMMARY JUDGMENT AND
ESTABLISHING SUPPLEMENTAL BRIEFING SCHEDULE**

Plaintiff Maureen Collver initiated the above-captioned matter by filing her complaint against Defendant Bay Regional Medical Center, d/b/a/ McLaren Bay Region ("BRMC"), on June 30, 2016 in Bay County Circuit Court. Plaintiff alleges that Defendant terminated her employment after she received a false positive on a drug test. Plaintiff further alleges that Defendant's purported reason for terminating her employment was pretextual, and that Defendant's true reason for terminating her employment was her age. She therefore asserts the following four counts: (1) Age discrimination in violation of the Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. 37.201; (2) Breach of a Last Chance Agreement; (3) Breach of an oral contract; and (4) Promissory Estoppel.

On August 15, 2016 Defendant removed the action to this Court, arguing that this Court has federal subject-matter jurisdiction because Plaintiff's breach of contract and promissory estoppel claims are completely preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). *See* ECF No. 1. Defendant filed an answer to Plaintiff's

complaint on August 22, 2016. *See* ECF No. 2.  Then, on October 25, 2016 Defendant filed a motion for judgment on the pleadings, arguing that Counts II, III, and IV of Plaintiff's complaint are wholly preempted by the LMRA and that Plaintiff has failed to state a claim under the LMRA.  *See* ECF No. 6.  For the reasons stated below, Defendant's motion will be converted into a motion for summary judgment, and a supplemental briefing schedule will be established.

## I.

Plaintiff Maureen Collver, born on February 2, 1961, is a resident of Bay County, Michigan. *See* Compl. ¶¶ 1, 4, ECF No. 1.   Defendant BRMC is a domestic nonprofit corporation conducting business in Bay County, Michigan. Compl. ¶ 2. Defendant (or its predecessor) hired Plaintiff Collver as a registered nurse on or around January 12, 1987, and continued to employ Plaintiff over a 28 year period. Compl. ¶¶ 5-6.

## A.

Plaintiff alleges that in June of 2012 her estranged husband filed a false report with the Bay City Police Department that Plaintiff was stealing Vicodin from Defendant and hiding the medication in her car. Compl. ¶ 7.  The Bay City Police Department contacted Defendant's Human Resources Department regarding the allegations, and Plaintiff voluntarily consented to a search of her car, which did not reveal any stolen Vicodin. Compl. ¶¶ 8-9. Defendant also required Plaintiff to submit to a mandatory drug screening, which returned negative.  Compl. ¶ 10.

Almost one year later, in May of 2013, Defendant accused Plaintiff of failing to administer Vicodin to two patients in a six month period of time. Compl. ¶ 12. As a consequence Defendant, through Greg Purtell, required Plaintiff to enroll in the State's Health Professional

Recovery Program ("HPRP") or face termination. Compl. ¶ 13.  Plaintiff was also required to sign a Last Chance Agreement. Compl. ¶ 14.

The Last Chance Agreement is attached to Plaintiff's complaint as Exhibit A. *See* Last Chance Agreement, ECF No. 1.  It is an agreement between Plaintiff, Defendant, and Plaintiff's Union, the "Professional Registered Nurses Staff Council of McLaren Bay Region, Represented by Service Employees International Union Healthcare of Michigan" (the "Union").   The agreement was to be effective three years from the date of its execution.  In relevant part, the Last Chance Agreement provides as follows:

> 2.  The Employer, Union and the Employee agree that if the employee violates the terms of this Last Chance Agreement, the terms of any policy, work rule, and/or any terms of the collective bargaining agreement, or fails to comply with all requirements and conditions outlined in the [HPRP] Recovery Monitoring Agreement, during the three (3) years, Employee's employment shall terminate and such termination shall be considered to be for just cause.

> …

> 7.  Employer, at its expense, may require Employee to undergo an alcohol and/or drug screen analysis on occasions randomly selected by Employer.  Any refusal by Employee to submit to any such alcohol and/or drug screen analysis shall be deemed a voluntary quit and the voluntary quit shall be effective immediately upon such refusal. In the event that any such alcohol and/or drug screen analysis results in a confirmed positive reading, Employee shall be deemed to have voluntarily quit, and such voluntary quit shall be effective immediately upon such positive reading.

> …

> 9. The Employer, the Union and the Employee shall understand and intend this document to constitute a last chance and agree that the Employee may be terminated under the terms of this Agreement without regard to progressive discipline, and regardless of the type, nature, or severity of such incident. Any termination of employment under this Agreement shall occur only after the incident in question is fully investigated by the Employer and a violation is found. The Employee will be entitled to Union representation during any such investigation.  However, the termination shall not be subject to the Grievance Procedure.

- 3 -

*See* Last Chance Agreement ¶¶ 2, 7, 9. Plaintiff, Defendant, and the Union signed the agreement on July 10, 2013. *Id.*

**B.**

Shortly after the parties entered into the Last Chance Agreement, in July of 2013 Defendant required Plaintiff to submit to a drug screening test. Compl. ¶ 15. The test returned positive, however Plaintiff alleges that the positive result was caused by a labeling error by RediMed in Bay City, Michigan, and alleges that RediMed admitted to the labeling error. Plaintiff's employment was not terminated as a result of the positive test result. Compl. ¶ 17.

On December 30, 2013 the parties extended the Last Change Agreement an additional six months, or until January 10, 2017. *See* Last Chance Agreement.

On May 7, 2014 Plaintiff underwent another drug screen test that returned positive. Compl. ¶ 21. Plaintiff alleges that the positive result occurred due to an injection of medication to her knee that she had received the previous day from Doctor Mark Stewart, M.D. for a knee problem. Compl. ¶ 20. Dr. Steward allegedly wrote Defendant a letter stating that the injection of medication caused the false positive result. Compl. ¶ 23. Defendant again did not terminate Plaintiff's employment.

Plaintiff underwent yet another drug screening on or around June 18, 2014. Compl. ¶ 25. Plaintiff alleges that while the doctor administering the test hired by HPRP, William Marrone, D.O., determined that the result was negative, subsequent tests revealed a positive result for Serax (Oxazepam), a benzodiazepine used to control symptoms of alcohol withdrawal. Compl. ¶ 27. On July 8, 2014 Dr. Marrone wrote a letter to Defendant stating that "the lab used for confirmation testing does not follow the same chain of custody as HPRP lab. [Plaintiff's] HPRP urine testing from 6/19/14 was negative." Compl. Ex. B. Dr. Marrone therefore recommended

- 4 -

that Plaintiff be allowed to "continue to work both at her job and at her recovery program without issue." *Id.*

## C.

Nonetheless, on July 24, 2014 Human Resources Director Kath Roberts informed Plaintiff that her employment was terminated. Compl. ¶ 31. Plaintiff alleges that Ms. Roberts promised Plaintiff that she would be able to retain her position and benefits if she proved that the May and June drug test results were incorrect. Compl. ¶ 32. Union officials were allegedly present at the time Ms. Roberts made this promise. Compl. ¶ 33. As a result, Plaintiff underwent a hair follicle test from HPRP representative, which returned negative.  Compl. ¶ 34.  Plaintiff supplied the hair follicle test result to Ms. Roberts, but Defendant refused to acknowledge the test and denied that Ms. Roberts had made any promise to Plaintiff. Compl. ¶¶ 34-35.

Plaintiff alleges that at the time of her termination she was one of the highest paid registered nurses working for Defendant due to her years of experience. Compl. ¶ 36. Plaintiff further alleges that Defendant replaced her with a substantially younger nurse at a lower pay rate. Compl. ¶ 37.  As a result of her termination, Plaintiff alleges that she has suffered severe economic damages, including lost wages, back pay, front pay, raises, promotion, and benefits. She also alleges that she has suffered non-economic damages including emotional distress, anxiety, and depression.

## II.

On October 25, 2016 Defendant filed the pending motion for judgment on the pleadings. *See* ECF No. 6.  Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  As set forth in *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010), a

district court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the complaint states a plausible claim for relief. "However, the plaintiff must provide the grounds for its entitlement to relief" and that "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)).

## A.

In its motion for judgment on the pleadings, Defendant argues that Plaintiff's breach of contract and promissory estoppel claims are completely preempted by the Section 301 of the LMRA. Relevantly, 29 U.S.C. § 185(a) provides:

> "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, orr between any such labor organizations, may be brought in any district of the United Estates having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

*Id.* The Supreme Court has interpreted this statute as a complete preemption statute, holding that "when the heart of the state-law complaint is a clause in the collective bargaining agreement, that complaint arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quotations, citations, and alterations omitted). In other words, "[t]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Id*. (quoting *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1 (1983)).

"Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 394 (quotations and citations omitted). The parties agree that, in determining whether complete preemption applies, this Court must determine (1) whether proof of Plaintiff's claims requires interpretation of the collective bargaining agreement's terms, and (2) whether the right claimed by Plaintiff is created by the collective bargaining agreement. *See DeCoe v. General Motors Corp.,* 32 F.3d 212, 216 (6th Cir. 1994). "If a state-law claim fails *either* of these two requirements, it is preempted by § 301." *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004).

## B.

As an initial matter, Defendant has attached and referred to documents outside of the pleadings. Specifically, Defendant has presented documents suggesting that the Union filed a grievance on behalf of Plaintiff on July 29, 2014 in which the Union disputed Plaintiff's termination, and that McLaren denied the grievance on September 8, 2014. Defendant's documents further suggest that on October 31, 2014 the Union denied her appeal of the Union's decision not to submit her grievance to arbitration.

Federal Rule of Civil Procedure 12(c) requires a court to convert a motion for judgment on the pleadings to a motion for summary judgment where "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(c). Documents attached to a Rule 12 motion are considered part of the pleadings if they are referred to in the complaint and are central to the plaintiff's claim. *See Weiner v. Klais & Co.*, 108 F.3d 86, 88-89 (6th Cir. 1997). If the Court chooses to treat a Rule 12(c) motion as a motion for summary judgment under Rule 56,

"[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

While Plaintiff's Collective Bargaining Agreement is referenced in the exhibits attached to Plaintiff's complaint,[1] the complaint makes no mention of the remedies Plaintiff sought through her Union. Because the question of LMRA preemption requires consideration of Plaintiff's relationship with the Union, Defendant's motion for judgment on the pleadings will be converted into a motion for summary judgment. The parties will be granted a reasonable opportunity to present any additional relevant materials pertinent to the motion.

### III.

Accordingly it is **ORDERED** that Defendant's motion for judgment on the pleadings is **CONVERTED** into a motion for summary judgment pursuant to Rule 56.

It is further **ORDERED** that the parties are **DIRECTED** to submit supplemental briefs to Defendant's motion for summary judgment as follows:

| | |
|---|---|
| Plaintiff's 15-page Response Brief: | **February 28, 2017** |
| Defendant's 7-page Reply Brief: | **March 8, 2017** |
| Plaintiff's 7-page Surreply Brief: | **March 15, 2017** |

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 20, 2017

---

[1] At this stage, neither party has presented the Court with a copy of the relevant collective bargaining agreement, despite Defendant's arguments that the Last Chance Agreement was arrived at by virtue of the collective bargaining agreement and requires interpretation of the collective bargaining agreement, and that Plaintiff's state law claims are preempted by the collective bargaining agreement

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 20, 2017.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager